Nancy A. Mismash
ROBERT J. DEBRY & ASSOCIATES
4252 South 700 East
Salt Lake City, UT 84107
Tel: (801) 262-8915
Fascimile: (801) 262-8995

Peter W. Burg
James G. Heckbert
A. Casey Geiger
BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80210
Telephone: (303) 792-5595
Facsimile: (303) 708-0527
*Attorneys for Plaintiff*
*Martin L. Smith*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| MARTIN L. SMITH <br><br>  Plaintiff, <br><br> v. <br><br> WRIGHT MEDICAL GROUP, INC., <br> a Delaware corporation, and <br> WRIGHT MEDICAL TECHNOLOGY, INC., <br> a Delaware corporation, <br><br>  Defendants. | **PLAINTIFF'S RESPONSE TO DEFENDANT WRIGHT MEDICAL GROUP'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** <br><br> Case No. 2:15-cv-00140-DBP <br><br> Judge David Nuffer |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT WRIGHT MEDICAL GROUP'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff, Martin L. Smith, through undersigned counsel, hereby responds to Defendant

Wright Medical Group, Inc.'s Memorandum of Law in support of its Motion to Dismiss for lack

of Personal Jurisdiction and states as follows:

## I.      INTRODUCTION

Wright Medical Group, Inc. ("WMG") seeks dismissal pursuant to F.R.C.P. 12(b)(2) for lack of personal jurisdiction, arguing that it is a purported "holding" company without any connection to the design, manufacture, testing, distribution, marketing, or sales of any hip implant products including the PROFEMUR products at issue in Plaintiff's complaint.[1] WMG's arguments fail for three reasons.

First, WMG's Motion to Dismiss fails because the allegations in Plaintiff's Complaint allege that WMG designed and manufactured the subject PROFEMUR hip product and marketed and sold it in Utah, which product was in fact placed in Plaintiff's body in Utah, which product was defective and ultimately failed, thereby causing the injuries, damages, and losses sustained by Plaintiff in Utah. Contrary to Defendant's Motion, those allegations specifically connect WMG and its product to the forum (Utah) and to this litigation (damages arising from a PROFEMUR hip failure). Under the controlling law, Plaintiff's allegations on their face confer personal jurisdiction over Wright Medical Group. Accepting the allegations in Plaintiff's complaint as true, the Court must reject WMG's Motion to Dismiss.

Second, Defendant's affidavit submitted with its Motion conflicts with the competent written evidence submitted in this Response, which evidence supports the jurisdictional facts alleged by Plaintiff. WMG's own public statements to the Securities and Exchange Commission and WMG's own press releases—statements for which this Court can take judicial notice— contradict WMG's affidavit and create at the least genuine issues of material fact as to WMG's

---

[1] The Court should be aware of a virtually identical case filed against WMG by Plaintiff Curtis Ricord alleging failure of the PROFEMUR Hip device designed, manufactured, marketed, and sold by Defendant WMG. That case is pending before the Honorable Bruce Jenkins – case number 2:15-cv-00141-DBP. Defendant WMG has also filed a motion to dismiss in that case by citing the Lightman affidavit. Plaintiff is responding to that motion contemporaneously herewith.

direct involvement in the design, manufacture, marketing, and sale of Wright's hip implant products, including the defective Profemur product implanted into Plaintiff's body.

Third, the evidence further confirms that Wright Medical Group controlled the manufacture and sale of Plaintiff's PROFEMUR hip device from France to the forum state, Utah and that Wright Medical Group, Inc.—not Wright Medical Technology, Inc.—realized a significant profit from the sale of the PROFEMUR product line.

Thus, although WMG submitted an affidavit of its general counsel claiming WMG has no connection to the forum or the product at issue in this litigation, the written evidence submitted herewith shows that WMG's affidavit at best simply creates conflicting jurisdictional facts that require denial of Defendant's Motion. The WMG affidavit directly conflicts with WMG's own factual statements, which factual statements support Plaintiff's allegations in his Complaint. The conflicting jurisdictional facts support *prima facie* evidence of specific personal jurisdiction over WMG and the Court should therefore deny Defendant's Motion to Dismiss

## II.    CONTROLLING LAW

Plaintiff pleaded specific personal jurisdiction against WMG in his Complaint. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (U.S. 2014). The specific jurisdiction analysis in Utah involves a three-part inquiry: "(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). The Utah Legislature has determined the Utah long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due

3

process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann.

§ 78B-3-201(3) (2008).

The due process analysis is usually made first "because any set of circumstances that

satisfies due process will also satisfy the long-arm statute." *Soma*, 196 F.3d at 1298. The Court's

specific jurisdiction due process inquiry is two-fold:

> First, we must determine whether the defendant has such minimum contacts with
> the forum state "that he should reasonably anticipate being haled into court there."
> Within this inquiry we must determine whether the defendant purposefully
> directed its activities at residents of the forum, and whether the plaintiff's
> claim arises out of or results from "actions by the defendant himself that create a
> substantial connection with the forum state." Second if the defendant's actions
> create sufficient minimum contacts, we must then consider whether the exercise
> of personal jurisdiction over the defendant offends "traditional notions of fair play
> and substantial justice." This latter inquiry requires a determination of whether a
> district court's exercise of personal jurisdiction over a defendant with minimum
> contacts is "reasonable" in light of the circumstances surrounding the case.

*OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citations

omitted). The analysis ensures that a defendant will not be haled into a jurisdiction solely as a

result of 'random,' 'fortuitous,' or 'attenuated' contacts. *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 475 (U.S. 1985).

Under Utah law, if jurisdictional allegations are challenged by an appropriate pleading, a

plaintiff must then support the jurisdictional complaint allegations by competent proof of the

supporting facts. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1508 (10th Cir. 1995); *Pytlik v.

Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). Here, Defendant WMG

seeks dismissal for lack of personal jurisdiction pursuant to a Fed. R. Civ. P. 12(b)(2) motion,

claiming it has no connection to the forum.

As this Court held in *Brockbank v. Wolfe*, "when a district court rules on a Fed. R. Civ. P.

2(b)(2) motion to dismiss for lack of personal jurisdiction . . . the plaintiff need only make a

prima facie showing of personal jurisdiction to defeat the motion." 2014 U.S. Dist. LEXIS 81104, *4, 2014 WL 2615827 (D. Utah June 12, 2014) (quoting *OMI Holdings*, 149 F.3d 1086, 1091). "The plaintiff may make this prima facie showing by demonstrating, via affidavit **or other written materials**, facts that if true would support jurisdiction over the defendant." *OMI Holdings,* 149 F.3d at 1091 (emphasis added). In evaluating the documentary evidence, the Court does not act as a factfinder. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). The Tenth Circuit has acknowledged that when evaluating the personal jurisdictional issue "[i]n the preliminary stages of litigation . . . the plaintiff's burden is light." *Wenz*, 55 F.3d at 1505.

### III.   ARGUMENT

**A. Plaintiff's Complaint unambiguously alleges that Wright Medical Group was directly engaged in the business of designing, licensing, manufacturing, distributing, marketing, and selling the product at issue in this case.**

As an initial matter, WMG does not dispute that Plaintiff was implanted with PROFEMUR Hip products on January 9, 2006, or that the products implanted were designed, manufactured, and marketed by a Wright company. Indeed, it is undisputed that the Wright company that designed, manufactured, and marketed the PROFEMUR products implanted in Plaintiff in Utah in 2006 purposefully availed itself to conduct business in Utah, invoking the benefits and protections of Utah's laws and subjecting itself to specific personal jurisdiction. Plaintiff's Complaint contains allegations against both Wright Medical Technology, Inc., and Wright Medical Group, Inc. in this regard.

Plaintiff's Complaint unambiguously alleges that Wright Medical Group, Inc. itself was directly engaged in the business of designing, licensing, manufacturing, distributing, marketing, and selling the product in question. Defendant's Motion to Dismiss claims Plaintiff "conflates WMG and WMT together as if they were a single entity. . . [and] Plaintiff merely alleges that

WMG was the parent corporation of defendant [WMT]." (motion, p. 7-8). Defendants' narrow reading of the Complaint fails. Although Plaintiff's Complaint does contain allegations that WMT is a subsidiary of WMG, Plaintiff's Complaint does not merely allege that WMG's role with respect to the PROFEMUR products as that of parent over a subsidiary; rather, Plaintiff alleges WMG's direct role in designing, manufacturing, and selling, the PROFEMUR product implanted in Plaintiff in Utah.

Specifically, Plaintiff alleges the following: "Plaintiff Martin L. Smith brings this product liability personal injury action as a recipient of a defective medical device, known as the Wright Medical PROFEMUR® Hip System, *that was designed, manufactured, labeled, marketed, and distributed by Defendants.*" (Complaint, paragraph 10, emphasis added). "Defendants" is defined in the Complaint to specifically encompasses **both** WMG and WMT. (Complaint, paragraph 7).[2] As such, allegations against the "Defendants" must be read as allegations against both WMT *and* WMG.

Thus, for example, when Plaintiff alleges in paragraphs 10, 170, 182, 183, (among others), that the Wright Medical PROFEMUR Hip System was designed, manufactured, labeled, marketed, and distributed by the "Defendants," and uses the term "Defendants" throughout the Causes of Action, those allegations must be read as alleging that the Wright Medical PROFEMUR Hip System was designed, manufactured, labeled, marketed, and distributed by

---

[2] That Plaintiff groups these two companies together for reference does not alter the fact that Plaintiff's claims are brought against them as separate entities. WMG and WMT are also alleged to be "representatives, agents, employees, co-conspirators, servants, employees, partners, joint-venturers, franchisees, or alter egos" of each other—in other words, one is acting for or on behalf of the other. (Complaint, paragraph 7). This allegation also makes the factual claims against WMG direct, rather than through a parent/subsidiary relationship. Plaintiff is entitled to make alternative, even conflicting, allegations in support of its claims. Fed.R.Civ.P. 8(d)(2) and (3).

Wright Medical Group and the Causes of Action are directly alleged against Wright Medical Group for its own direct role in causing Plaintiff's alleged injuries in Utah.

Moreover, the Complaint makes extensive allegations against "Wright Medical." (See Complaint, paragraphs 14-168) Like the term "Defendants," "Wright Medical" is a term defined by the Complaint and specifically encompasses **both** WMG and WMT. (Complaint, paragraph 7). As such, when Plaintiff makes allegations against "Wright Medical," those allegations must be read as allegations directly against WMG. Given the allegations, it is Defendant, not Plaintiff, who is trying to conflate WMT and WMG.

The factual allegations of Plaintiff's Complaint against WMG establish that WMG expected and intended that its PROFEMUR hip products—sold nationwide—would be distributed and sold in the State of Utah, which in fact occurred here. (*See* Complaint, Paragraph 97). Moreover, that WMG may use its wholly owned subsidiary, WMT, as the national distributor of its products does not render WMG immune from suit in Utah when—as shown by the written documentation provided herein—WMG is the company that designs, manufactures, and sells the products. *See e.g.,* cases listed in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2801, 2804-2806 (U.S. 2011) (J.Ginsberg, Dissent) ("Courts, both state and federal, confronting facts similar to those here, have rightly rejected the conclusion that a manufacturer selling its products across the USA may evade jurisdiction in any and all States, including the State where its defective product is distributed and causes injury.")

Contrary to Defendant's Motion, Plaintiff's Complaint sets forth sufficient substantive jurisdictional facts against Wright Medical Group showing it purposefully availed itself of the privilege of conducting business in Utah and that Mr. Smith's litigation directly arose from Wright Medical Group's contacts with Utah. *Brockbank*, 2014 U.S. Dist. LEXIS 81104, *4

(Plaintiff need only show a reasonable inference that the court has jurisdiction over the defendant.). Here, Plaintiffs have fully alleged that the defendant's acts or contacts implicate Utah under the Utah long-arm statute and that a 'nexus' exists between the plaintiff's claims and the defendant's acts or contacts.

**B. Plaintiff's competent evidence supports Plaintiff's Complaint allegations that WMG designed, manufactured, marketed, tested, and sold the PROFEMUR Hip Device.**

In an attempt to contradict the Plaintiff's allegations against WMG, Defendant attached an affidavit of its general counsel, James Lightman, to its Motion, making conclusory assertions that WMG has nothing to do with the product at issue here. But Mr. Lightman's affidavit is contradicted by WMG's own public statements to the Securities and Exchange Commission, WMG's own press releases, and various marketing material created by WMG—all of which this Court can take judicial notice.[3] This competent written evidence creates at the least genuine

---

[3]     FRE 201 governs judicial notice: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under the Rule, the court may take judicial notice on its own and "must take judicial notice if a party requests it and the court is supplied with the necessary information." The court may take judicial notice at any stage of the proceeding. FRE 201.

Judicial notice is appropriate for SEC filings and press releases as they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b); *see, e.g., Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Plevy v. Haggerty*, 38 F. Supp.2d 816, 821 (C.D. Cal. 1998) (taking judicial notice of SEC filings, press releases, analysts' reports, news articles, and stock prices); *In re Network Assocs. Sec. Litig.*, 2003 U.S. Dist. LEXIS 14442 (N.D. Cal. Mar. 25, 2003) *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1293 (D. Colo. 2013) (Court properly took "judicial notice of various publicly-available documents, including GRC press releases, forms filed with the SEC, transcript of earnings conference calls, and a Google Finance chart showing opening and closing stock prices on August 10, 2012."). Moreover, the filings and press releases are not hearsay because Wright has plainly "manifested an adoption or belief in [the] truth" of the representations made. Fed. R. Evid. 801(d)(2)(B). *See Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, 2008 U.S. Dist. LEXIS 26949, 27-28 (S.D.N.Y. 2008); see e.g., **Exhibits 1-1 to 1-4** pp. 81-83) (10-K certifications by COO and CEO).

issues of material fact as to WMG's direct involvement in the design, manufacture, marketing, and sale of Wright's hip implant products, including the defective PROFEMUR product implanted into Plaintiff's body.

    **a.  *SEC Statements***

As a publicly traded company, WMG was required to file various public documents and disclosures with the Securities and Exchange Commission. (*See* Section 13 and 15(d) of the Securities and Exchange Act of 1934). WMG filed many quarterly and annual reports detailing its company, its business, its products, and its financials. This is critical here because WMG has for many years publicly identified itself as the company that specializes in the design, manufacture and marketing of reconstructive joint devices, and has claimed the Wright products—including the PROFEMUR products at issue here—as its own. While WMG may now claim that Wright Medical Technology, Inc. is the sole designer, manufacturer, and marketer of the Wright hip implant products, WMG's various public SEC filings of which the court can take judicial notice all render that claim dubious.

For example, WMG's Annual 10-K Report filed in 2001 (the year WMG acquired the PROFEMUR Hip Device) makes the following statements:

**2001 10-K (Exhibit 1-1)**

Overview

    **Wright Medical Group, Inc. (the "Company") is a global orthopaedic device company specializing in the design, manufacture and marketing of reconstructive joint devices** and bio-orthopaedic materials. Reconstructive joint devices are used to replace knee, **hip** and other joints that have deteriorated through disease or injury. (p. 2).

---

    The judicial notice being taken, of course, is not the Court's determination that the statements are true; rather, it is a judicial determination that the statements were in fact made by the Wright Medical Group, Inc., thus creating a disputed question of fact between what Wright Medical Group, Inc. has publicly stated for many years, and what is being said by Mr. Lightman in his affidavit crafted for use in this litigation.

History:

   **The Company acquired Cremascoli Ortho Group** ("Cremascoli"), based in Toulon, France. This **acquisition extended the Company's product offerings**, enhanced the Company's product development capabilities, and expanded the Company's European presence. **As a result of combining Cremascoli's strength in hip reconstruction** with Wright's historical expertise in knee reconstruction and bio-orthopaedic materials, the Company now offers orthopaedic surgeons a broad range of reconstructive joint devices and bio-orthopaedic materials in over 40 countries (p. 2).

Hip Reconstruction:

   The **Company offers a comprehensive line of products for hip joint reconstruction**. This product portfolio, which was strengthened by the Cremascoli acquisition, provides offerings in the areas of bone-conserving implants, **total hip reconstruction, revision replacements implants**, and limb preservation. Additionally, the **Company's hip products offer a combination of innovative modular designs**…

   Through the Company's acquisition of Cremascoli, **several hip implant products designed for the European market, including** the ANCA FIT-Registered Trademark – Hip System and **PROFEMUR-TM-R Hip System, were acquired** . . . The **PROFEMUR-TM-R Hip stem is a revision replacement implant with a patented modular femoral neck component**, which allows the surgeon to make final adjustments to the implant as the last stem in the procedure in order to accommodate each patient's unique anatomy. (p. 8).

Product Development:

   Modular hip systems are growing in popularity, especially in revision replacement hip implant procedures. The PROFEMUR-TM-R was designed by Cremascoli for the European market. Although **the Company is currently selling this product in the U.S.**, **the Company is also developing a modified version and instrumentation to address the needs of U.S. surgeons**. The new system, the PROFEMUR-TM-USA Modular Hip will capitalize on the successful clinical history of the current PROFEMUR-TM-R product while incorporating new technology into the design. (p. 11).

Manufacturing and Supply:

   **The Company operates manufacturing facilities in both Arlington, Tennessee and Toulon, France. These facilities primarily produce orthopaedic implants and some of the related surgical instrumentation** used to prepare the bone surface and cavities during the surgical procedure. The majority of the Company's surgical instrumentation is produced to the Company's specifications and designs by qualified subcontractors who serve medical device companies. (p. 14).

   Employees:

As of December 31, 2001, **the Company employed directly** and through **our** subsidiaries 751 people in the following areas: 347 in manufacturing, 217 in sales and marketing, 121 in administration and 66 in research and development. (p. 17).

(emphasis added).

Plainly, Wright Medical Group, Inc. unambiguously identified itself—and only itself—as the "Company" (with a capital "C") whose products are being discussed in the 10-K filing. Subsidiaries—including Wright Medical Technology, Inc.—are *not* included within that "Company" reference. WMG plainly separates its subsidiaries (such as Wright Medical Technology, Inc.) from the "Company."[4] This separation is critical to the inquiry because WMG's SEC filings specifically identify the "Company's" (i.e., Wright Medical Group, Inc.), business as designing, manufacturing, and marketing of reconstructive joint devices—the very fact Defendant now disputes in its Motion.

Various other SEC statements by WMG throughout 2002, 2003, 2004, 2005, and 2006 express similar claims with regard to WMG's design, manufacture, and marketing of the Wright products.[5] In the 2006 10-K (the year Plaintiff's implant was completed), WMG continued to express that it is the company that specializes in the design, manufacture, and marketing of its products:

---

[4] For example, see also **Exhibit 1-1**, p. 21, where WMG plainly separates WMG from Wright Medical Technology, Inc. in its filings. ("The following table sets forth certain selected consolidated financial data of Wright Medical Group, Inc. (the "Company") and Wright Medical Technology, Inc., (the "Predecessor Company") . . . .

[5] Plaintiff recognizes the voluminous nature of these exhibits is not ideal. However, Plaintiff is wary to provide only selected portions of these documents as exhibits. Based on past experience in other forums, Plaintiff's counsel anticipates WMG will claim Plaintiff is attempting to mislead the Court for failing to provide the full SEC documents. Thus, the full documents are provided. To help direct the Court to the relevant portions of the exhibit and assist the Court in its review of WMG's statements, Plaintiff has highlighted each exhibit for ease of reference.

**2006 10-K (Exhibit 1-2)**

Overview

     **Wright Medical Group, Inc., through** Wright Medical Technology, Inc. and other operating subsidiaries, **is a global orthopaedic medical device company specializing in the design, manufacture and marketing of reconstructive joint devices and biologics products**. . . . Within these markets, **we focus on the higher-growth sectors of the orthopaedic industry, such as** advanced bearing surfaces, **modular necks** . . .. (p. 1).

History:

     **We** were incorporated in November 1999, as a Delaware corporation and had no operations until December 1999 when **we** acquired majority ownership of **our** predecessor company, Wright Medical Technology, Inc., in a recapitalization transaction, and immediately thereafter acquired Cremascoli Ortho Holding, S.A., based in Toulon, France. **The Cremascoli acquisition extended our product offerings**, enhanced **our product development capabilities**, and expanded our European presence. As a result of combining Cremascoli's strength in hip reconstruction with the predecessor company's historical expertise in knee reconstruction and biologics, **we offer a broad range of reconstructive joint devices** and biologics to orthopaedic surgeons in over 60 countries. (p. 1).

Orthopaedic Industry:

     **We specialize in reconstructive joint devices** and biologics products. (p. 1).

Government Regulation:

     **Our products** are strictly regulated by the United States Food and Drug Administration (FDA) under the Food, Drug, and Cosmetic Act (FDC Act). Some of **our products** are also regulated by state agencies. (p. 3).

Hip Reconstruction

     **We offer** a comprehensive line of products for hip joint reconstruction. . . . **our hip products** offer a combination of unique, innovative **modular designs** . . .

     The PROFEMUR® patented modular neck systems allow surgeons to carefully adjust and fine-tune implant positioning during surgery. If a surgeon requires a change in leg length, offset or version, the PROFEMUR ® system conveniently allows these options, without compromise. All of these options can be changed after the hip stem is in place**. Our principal PROFEMUR® stem offerings which allow this innovative modularity include our PROFEMUR® Z, PROFEMUR® Plasma Z, PROFEMUR® LX, PROFEMUR® Tapered, PROFEMUR® RAZ, PROFEMUR® TL and the**

**PROFEMUR® RENAISSANCE® stems**. These stems represent the vast majority of popular stem designs in the current marketplace. (p. 5-6).

Employees

As of December 31, 2006, **we employed approximately 1,060 people** in the following areas: 440 in manufacturing, 340 in sales and marketing, 150 in administration and 130 in research and development.  (p. 13).

(emphasis added).

While WMG may claim today to have no employees and not be the designer and distributor of the PROFEMUR modular neck at issue in this case, that was plainly not its claim in the many year preceding Mr. Smith's PROFEMUR implant when WMG unambiguously claimed the PROFEMUR product as its own. Contrary to the Defendants' affidavit, the Form 10-K's filed by WMG do not identify WMG as simply a "holding company" unaffiliated with any design, manufacturing, or marketing of Wright's products as represented by Mr. Lightman's affidavit, nor is there any identification of Wright Medical Technology, Inc. as the sole designer, manufacturer, or seller of any products sold by Wright. Contrary to Mr. Lightman's affidavit, the public representations of Wright has always been that Wright Medical Group., Inc. is the designer, tester, manufacturer, marketer, and seller of hip products, including the PROFEMUR® hip products at issue here.

In the years since the PROFEMUR product was implanted into the Plaintiff, WMG has never disclaimed ownership and responsibility for its PROFEMUR products in its SEC filings. WMG continued into 2014 to represent to the public that the PROFEMUR product was its own. Significantly, in reference to the product defect lawsuits against it concerning its PROFEMUR products, WMG represents in its 2013 10-K (the year Plaintiff's hip fractured) that these lawsuits involve "our PROFEMUR series of hip replacement devices," stating:

**2013 10-K (Exhibit 1-3):**

Product Liability Lawsuits Could Harm Our Business:

Claims for personal injury have also **been made against us associated with fractures of our PROFEMUR® long titanium modular neck product**. We believe that the overall fracture rate for the product is low and the fractures appear, at least in part, to relate to patient demographics, and have been vigorously defending these matters. While continuing to dispute liability, we have been open to settling these claims in circumstances where we believe the settlement amount is reasonable relative to the risk and expense of litigation. (p. 14).

Product Liability:

Additionally, as of February 21, 2014, **we are a defendant in 25 lawsuits** in various state and federal courts involving claims for damages for personal **injury associated with fractures of our PROFEMUR® long titanium modular neck product**. (p. 25).

In that same 10-K, WMG discusses in detail the impact of PROFEMUR product defect claims on Wright Medical Group, Inc.'s balance sheet and discusses in detail "our liability" and the product liability insurance that WMG has used—and has exhausted—for the PROFEMUR claims. (See **Exhibit 1-3, p. 47**). Note that "our" plainly refers only to WMG; as with all its SEC filings, Wright Medical Group, Inc., plainly separates WMG from its subsidiaries. This again conflicts with the Defendant's affidavit, creating jurisdictional facts that cannot be resolved on a Motion to Dismiss.

In summary, Wright Medical Group, Inc.'s public SEC filings of which this Court can take judicial notice provide sufficient competent evidence consistent with the allegations of Plaintiff's complaint that creates factual conflicts establishing Plaintiff's *prima facie* showing of personal jurisdiction.

   **b.  *Press Releases***

Consistent with WMG's SEC filings, this Court can also take judicial notice, pursuant to FRE 201[6], of WMG's own public press releases in which it describes itself as "a global orthopaedic medical device company specializing in the design, manufacture and marketing of reconstructive joint devices" and of its claimed responsibility for the PROFEMUR products. Specifically, between the years 2000 and 2013, WMG released the following press releases[7] that contain language about its PROFEMUR modular neck:

- December 8, 2004 – "***Wright Medical Group, Inc. Introduces*** *PROFEMUR Tapered Stem Total Hip System.*" WMG's press release states "The PROFEMUR Tapered Stem Total Hip System represents the latest enhancements to **Wright's family of innovative hip solutions featuring modular neck technology**." (**Exhibit 2-1**, emphasis added).

- May 19, 2005 – "***Wright Medical Group, Inc.'s*** *PATH Technique For Less invasive Total Hip Arthroplasty to be Featured in Live Surgery at Upcoming Conference.*" WMG's press release states "The PATH™ Technique and instrumentation are designed for use with **Wright's PROFEMUR® hip system with modular neck technology**" (**Exhibit 2-2**, emphasis added).

- July 19, 2006 – "***Wright Medical Group, Inc.*** *Announces Launch of PROFEMUR® RENAISSANCE™ Total Hip System.*" WMG's press release states "As part of **Wright's PROFEMUR® family of implants, the RENAISSANCE™ stem also incorporates modular neck technology** which is ideally suited for a less invasive surgical approach." (**Exhibit 2-3**, emphasis added).

- August 14, 2006 – "***Wright Medical Group, Inc.*** *Teams Up With Jimmy Connors for Dynamic Patient Education Outreach Program.*" WMG's press release states "The website 'jimmysnewhip.com' and print collateral from **Wright will focus on advances like** larger diameter femoral heads, **modular neck technology** and less invasive surgical options." (**Exhibit 2-4**, emphasis added).

- December 6, 2006 – "***Wright Medical Group, Inc.*** *to Host Webcast Featuring the Less Invasive PATH® Technique for Total Hip Arthroplasty.*" WMG's press release states "The PATH® MIS technique and instrumentation are designed for use with **Wright's PROFEMUR® modular neck hip system**." (**Exhibit 2-5**, emphasis added).

---

[6] See Footnote 3, above.
[7] Notably, the "contact" for each of these press releases is "Wright Medical Group, Inc., Arlington" and the "source" of the press releases is "Wright Medical Group, Inc."

- February 9, 2007 – "*Tennis Legend Jimmy Connors Joins Wright Medical to Share His Experiences of Total Hip Replacement During American Academy of Orthopedic Surgeons' Meeting*." WMG's press release states "Additionally, **they selected the PROFEMUR® Modular Neck** which allowed Dr. Penenberg to precisely equalize leg length…" (**Exhibit 2-6**, emphasis added).

- April 24, 2007 – "***Wright Medical Group, Inc.** Expands Hip Product Portfolio With Key Product Launches*" WMG's press release states " The new PROFEMUR® TL Stem combines the flexibility of **Wright's modular neck technology** with the proven design of a flat tapered wedge geometry stem." (**Exhibit 2-7**, emphasis added).

- February 7, 2008 – "***Wright Medical Group, Inc.** Enhances Hip Offering With Launch of Additional PROFEMUR® Stem Designs and Introduction of Unique Less-Invasive Surgical Technique*." WMG's press release states, in part, "While a number of orthopaedic manufactures are developing modular neck implants, **Wright is the pioneer of this technology offering a broad spectrum of modular necks and modular neck stem philosophies** backed by over 20 years of clinical results." (**Exhibit 2-8**, emphasis added).

Critically, these press releases do not support Mr. Lightman's affidavit that Wright Medical Technology, Inc. is the sole responsible party for the PROFEMUR Modular Neck at issue in this litigation. Rather, they directly contradict Mr. Lightman's affidavit by showing that WMG participated in the design, manufacture, labeling, marketing, promotion, distribution, and sell of the PROFEMUR hip implant at issue.

WMG's press releases also address the hiring of Mr. Lightman. On December 29, 2011, Wright Medical Group released the following Press Release: "*Wright Medical Group, Inc. Names James A Lightman Senior Vice President, General Counsel and Secretary*." (**Exhibit 2-9**). The press release goes on to state "**Wright Medical Group, Inc. (NASDAQ: WMGI), a global orthopaedic medical device company** and a leading provider of surgical solutions for the foot and ankle market, today announced that James A. Lightman has been named Senior Vice President, General Counsel and Secretary, effective immediately." (*Id.*, emphasis added).

16

These public statements by WMG directly contradict the Lightman affidavit created by the Defendant for use in this litigation. While WMG may claim today in this litigation to have no direct relationship to the PROFEMUR® products at issue here, that was plainly not what it was telling the public. Under Plaintiff's light burden of proof at this stage of the litigation, this Court must deny WMG's Motion to Dismiss.

**C. The documentary evidence further supports the allegations of Plaintiff's complaint that WMG controlled the manufacture and sale of Plaintiff's PROFEMUR hip device from Europe to the forum state, Utah.**

Beyond the SEC statements and press releases confirming WMG's involvement with the PROFEMUR products, the public evidence establishes that WMG controlled the entire stream of commerce from the design and manufacture of Plaintiff's PROFEMUR hip device to its final point of sale in Utah.

As set forth in Plaintiff's Complaint, WMG was formed in 1999-2000 through the combination of two entities, Cremascoli Ortho Group, Inc. ("Cremascoli"), which was the original designer of the PROFEMUR modular neck implanted into Plaintiff in Utah, and Wright Medical Technology, Inc. WMG's marketing materials and SEC statements confirm that WMG acquired Cremascoli in order to extend WMG's product offerings, including the PROFEMUR Modular Neck Hip System at issue in this case. On January 4, 2000, WMG release a press release stating "The Wright Medical Group was formed by the merger of Wright Medical Technology of Arlington, Tennessee, and Cremascoli Ortho Group of Toulon, France . . . The **combined Wright Medical Group** will benefit from distribution channels and product lines which are very complementary." (**Exhibit 3**, emphasis added).

WMG did expand the PROFEMUR hip system to the US market while maintaining manufacturing operations in its manufacturing facilities in Toulon, France. (Complaint, para. 15-16). The product identification stickers of Plaintiff's PROFEMUR hip implanted in Utah confirm

17

that the PROFEMUR Titanium Modular Neck was manufactured at WMG's facility in Toulon, France. Specifically, the product identification sticker for the PROFEMUR Modular Neck that fractured in this case states "Manufacturer Wright Cremascoli Ortho – Ze La Farlede – Rue Pasteur – BP 222 – 63089 Toulon Cedex 9 (France)."



**Exhibit 4**. It is expected that the sales invoice for the distribution of WMG's PROFEMUR product will be produced in discovery in this case to further establish the direct sale/distribution of the product in Utah, consistent with Plaintiff's allegations and the evidence showing the product in question was manufactured by WMG in France and the fact it was implanted into Plaintiff in Utah.

Then in 2013, after WMG realized significant profits from the sale of its PROFEMUR hip products to Plaintiff and others WMG sold its hip and knee division—including the PROFEMUR Modular Neck Hip System at issue in this case—to MicroPort Scientific Corporation ("MicroPort"). In a press release dated January 9, 2015, WMG states "Wright Medical Group, Inc. (NASDAQ: WMGI) today announced the closing of the transaction to divest its OrthoRecon business to MicroPort Scientific Corporation (HK: 0853) and its affiliates.

The closing of the transaction occurred on January 9, 2014. (**Exhibit 5**). In a subsequent report (10-Q) for the quarterly period ending March 31, 2014, WMG details the $285 million sale of its hip and knee products (its "OrthoRecon business"—which included its PROFEMUR products) to MicroPort. Critically, WMG does not state that the $285 million cash is the property of its subsidiary, Wright Medical Technology, Inc. In fact, WMG states: "*we* recognized approximately $24.3 million as the gain on disposal of the OrthoRecon business." (**Exhibit 6, pp. 10-11**, emphasis added).

Despite the evidence that WMG manufactured Plaintiff's hip at its facility in Toulon, France, the undisputed allegations that the product was implanted in Plaintiff in Utah, and the evidence documenting WMG's profit of $24.3 million from the sale of its OrthoRecon business (which included the PROFEMUR products), WMG seeks dismissal from this case—without discovery—based on the affidavit of corporate counsel created for use in this litigation. WMG cannot overcome Plaintiff's prima facie showing of personal jurisdiction.

The statements WMG made in its SEC filings and press releases, the manufacturing records of Plaintiff's hip, and the financial gain WMG realized as a result of the sale of its OrthoRecon business, all as described in detail above and attached to this Response, create a dispute to the conclusory affidavit attached to WMG's Motion and support Plaintiff's *prima facie* showing of personal jurisdiction over Wright Medical Group, Inc. Considering the light burden imposed on Plaintiff at this early stage of the proceedings to establish jurisdictional facts, Defendant WMG cannot extricate itself from this case on a Motion to Dismiss. In accordance with the standard outlined in *OMI Holdings, Wenz,* and *Brockbank,* Plaintiff provides sufficient competent written materials to create genuine issues of material fact as to WMG's direct

involvement in the design, manufacture, and marketing of the PROFEMUR products at issue here.  Defendant's Motion should be denied.

## IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court deny WMGs FRE 12(b)(2) Motion to Dismiss for lack of personal jurisdiction. Plaintiff requests that the Court deny the Motion and allow the parties to conduct discovery. If the Court is inclined to resolve the conflicting jurisdictional facts prior to trial, Plaintiff requests a hearing be held. Plaintiff further requests that the Court grant such other and further relief as the Court deems just, reasonable, and proper.


Dated this 10th day of June, 2015.

Respectfully Submitted,


                    BURG SIMPSON
                    ELDREDGE HERSH & JARDINE, P.C.


                    *s/ A. Casey Geiger*

                    Peter W. Burg
                    James G. Heckbert
                    A. Casey Geiger
                    *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of June, 2015, a true and correct copy of the

foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT WRIGHT MEDICAL GROUP'S**

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** was filed using the

court's electronic system, which sent notice to the following:


Robert L. Janicki
Lance H. Locke
STRONG & HANNI
9350 South 150 East, Suite 820
Sandy, Utah 84070
*Attorneys for Defendant*

Michael V. Kell
Michael O.  Fawaz
HOWARD & HOWARD
450 West Fourth Street
Royal Oak, MI 48067
*Attorneys for Defendant*


*s/ Lori Harper*

EXHIBIT INDEX

| PLAINTIFF'S EXHIBIT NO. | TITLE |
|---|---|
| 1-1 | WMG 2001  10-K |
| 1-2 | WMG 2006  10-K |
| 1-3 | WMG 2013  10-K |
| 2-1 | 2004 12 08 Press Release Re Profemur Tapered Stem THS |
| 2-2 | 2005 05 19 Press Release Re WMG's Path Technique |
| 2-3 | 2006 07 19 Press Release Profemur Renaissance Hip Stem |
| 2-4 | 2006 08 14 Press Release Re Jimmy Connors Profemur 2 Hip |
| 2-5 | 2006 12 06 Press Release Re Path Technique for Total Hip Arthroplasty |
| 2-6 | 2007 02 09 Press Release Re Jimmy Connors Joining WMG |
| 2-7 | 2007 04 24 Press Release Re Expansion of Hip Product Portfolio |
| 2-8 | 2008 02 07 Press Release Re Additional Profemur Stem designs |
| 2-9 | 2011 12 29 Press Release Re James Lightman as Senior Vice President |
| 3 | 2000 01 04 Press Release of Wright Medical Group, Inc. Investor Relations |
| 4 | Smith Product Label Stickers |
| 5 | 2014 01 09 Press Release Re Completion of Microport Sale |
| 6 | 2014 Q1 10Q |
|  |  |